# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>JESSE JOHN WENDELSDORF,<br><br>  Defendant. | No. CR04-4111-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO TRANSFER** |

_____

This matter is before the court on motion of the defendant Jesse John Wendelsdorf to transfer this case to another division of this court. (Doc. No. 23) In the same document, the defendant asks for leave to submit a questionnaire to prospective jurors to determine the effects of pretrial publicity. That motion will be dealt with by separate order.) Wendelsdorf filed the motion on May 2, 2005. After obtaining an extension of time to respond, the plaintiff (the "Government") filed its resistance on May 17, 2005. (Doc. No. 27) Pursuant to the trial management order (Doc. No. 13), pretrial motions in this case were assigned to the undersigned United States Magistrate Judge for review, and the issuance of a report and recommended disposition. Accordingly, the court heard oral arguments on the motion on May 26, 2005. Assistant U.S. Attorney Kevin Fletcher appeared on behalf of the Government. Wendelsdorf appeared in person with his attorney Robert A. Lengeling. The court now finds the motion to be fully submitted and ready for decision.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The Grand Jury handed down an Indictment against Wendelsdorf on November 17, 2004, charging him with one count of conspiracy to rent, maintain, use, and control a residence in Spirit Lake, Iowa, for the purpose of manufacturing and distributing methamphetamine, and conspiracy to possess with intent to distribute methamphetamine. (Doc. No. 1) The period of time during which these activities allegedly took place is January 1997 to January 2000. (*Id.*)

On December 15, 2004, the Grand Jury handed down a Superseding Indictment that added a second count, charging Wendelsdorf with conspiracy to manufacture and distribute methamphetamine between January 2001 and November 25, 2003. (Doc. No. 7) Wendelsdorf was arraigned on the Superseding Indictment on February 14, 2005, and trial of his case was scheduled for April 4, 2005. (Doc. No. 13) Wendelsdorf was placed on pretrial release. (Doc. No. 16) On Wendelsdorf's motion, the trial was continued to June 6, 2005. (*See* Doc. Nos. 19 & 20)

In 2000, Wendelsdorf was tried and acquitted on charges that he sexually abused and murdered a two-year-old girl. The case was the subject of extensive media coverage in the State of Iowa, particularly in the western half of the state. Wendelsdorf's arrest on the present charges has resulted in further media attention, with nearly every media report reminding the public of Wendelsdorf's 2000 acquittal. In addition, Wendelsdorf alleges "the former Dickinson County Attorney has made inflammatory statements about [him] in newspaper articles circulated within the Western Division of the Northern District of Iowa." (Doc. No. 23, ¶ 6) Wendelsdorf argues "the media attention creates both presumptive and actual prejudice in the instant case." (Doc. No. 23, ¶ 6) He therefore asks that the case be transferred to another division of this court. Wendelsdorf has submitted excerpts from a number of newspaper articles published in and around

Dickinson County in support of his argument that excess media attention has created presumptive prejudice in the Western Division of the court.

The Government resists transfer to another division of the court, arguing "publicity surrounding this case has not been so extensive or corrupting to justify moving the trial to Cedar Rapids." (Doc. No. 27 at 2) The Government argues Wendelsdorf must do more than simply document the quantum of press coverage; he must show the reporting was inflammatory or accusatory. (*Id.* at 3, citing *United States v. Allee*, 299 F.3d 996, 1000 (8th Cir. 2002), and *Pruett v. Norris*, 153 F.3d 579, 585 (8th Cir. 1998)).

## *II. DISCUSSION*

The United States Supreme Court has addressed the potential for juror bias arising from pretrial publicity on several occasions, in a variety of factual circumstances. The Supreme Court "has long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial." *Gannett Co. v. DePasquale*, 443 U.S. 368, 378, 99 S. Ct. 2898, 2904, 61 L. Ed. 2d 608 (1979) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966); *Irvin v. Dowd*, 366 U.S. 717, 81 s. Ct. 1639, 6 L. Ed. 2d 751 (1961); *Marshall v. United States*, 360 U.S. 310, 79 S. Ct. 1171, 3 L. Ed. 2d 1250 (1959); *Estes v. Texas*, 381 U.S. 532, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965)).

Two early *habeas* cases are cited frequently for the proposition that publicity may endanger a defendant's constitutional right to a fair trial by an impartial jury. In both *Irvin v. Dowd*, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961), and *Sheppard v. Maxwell*, 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966), there was such a torrent of prejudicial publicity that the defendants, both of whom were convicted of

murder,[1] argued their convictions violated their right to a fair trial under the Fourteenth Amendment.[2] In both cases, the Court addressed constitutional principles inherent in any discussion of the impact of publicity in a criminal case.

In setting aside Irvin's conviction, the Court explained:

> In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. 'A fair trial in a fair tribunal is a basic requirement of due process.' In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne.' His verdict must be based upon the evidence developed at the trial.

*Irvin*, 366 U.S. at 722, 81 S. Ct. at 1642 (citations omitted). The Court explained that these rights are not intended to establish an impossible standard, noting:

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. . . . It is sufficient if the juror can lay

---

[1] Irvin was convicted in Indiana of first-degree murder and sentenced to death; Sheppard was convicted in Ohio of second-degree murder.

[2] The Sixth Amendment in terms guarantees "trial, by an impartial jury . . ." in federal criminal prosecutions. Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right in state criminal prosecutions. *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 1447, 20 L. Ed. 2d 491 (1968).

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551, 96 s. Ct. 2791, 2799, 49 L. Ed. 2d 683 (1976).

> aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin*, 366 U.S. at 722-23, 81 S. Ct. at 1642-43 (citations omitted).  That said, however, the Court noted the "adoption of such a rule . . . 'cannot foreclose inquiry as to whether, in a given case, the application of that rule works a deprivation of the prisoner's life or liberty without due process of law.'"  *Irvin*, 366 U.S. at 723, 81 S. Ct. at 1643 (quoting *Lisenba v. California*, 314 U.S. 219, 236, 62 S. Ct. 280, 290, 86 L. Ed. 166 (1941)).

The Court noted Irvin's trial judge had allowed an extensive, four-week-long *voir dire* of the prospective jurors, and personally had examined members of the jury panel whom the defendant claimed should be removed for cause after the defendant had exhausted all of his peremptory challenges.  Notwithstanding each jurors' indication that the juror believed he or she could render an impartial verdict, the Court found:

> The influence that lurks in an opinion once formed is so persistent that it unconsciously fights detachment from the mental processes of the average man. . . .  As one of the jurors put it, 'You can't forget what you hear and see.'

*Irvin*, 366 U.S. at 727, 728, 81 S. Ct. at 1645.  The Court therefore found Irvin's conviction was "in violation of the Constitution of United States," and vacated the judgment.  *Irvin*, 366 U.S. at 728-29, 81 S. Ct. at 1645-46.

In *Sheppard*, the Court held, "Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused."  *Sheppard*, 384 U.S. at 362-63, 86 S. Ct. at 1522 (quoted with approval in *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 553, 96 S. Ct. 2791, 2800, 49 L. Ed. 2d 683 (1976)).  Indeed, the Supreme Court has instructed trial courts that "[t]o safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty

to minimize the effects of prejudicial pretrial publicity." *Gannett Co., supra*, 443 U.S. at 378, 99 S. Ct. at 2904 (citing *Sheppard*).

The Eighth Circuit Court of Appeals also has considered the impact of pretrial publicity on several occasions, and has formulated a test for review of motions for change of venue based on pretrial publicity. The two-tiered analysis begins with a determination of whether the pretrial publicity has been "so extensive and corrupting that a reviewing court is required to 'presume unfairness of constitutional magnitude.'" *United States v. Blom*, 242 F.3d 799, 803 (8th Cir. 2001) (quoting *Dobbert v. Florida*, 432 U.S. 282, 303, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977)); *accord United States v. Nelson*, 347 F.3d 701, 707 (8th Cir. 2003). *See also United States v. Johnson*, 354 F. Supp. 2d 939, 981 (N.D. Iowa 2005) ("The decision in *Blom* makes clear that, in this circuit, the two-tiered analysis is the appropriate analysis for the district court, as well as the appellate court, to apply.") The *Blom* court further held:

> Because our democracy tolerates, even encourages, extensive media coverage of crimes such as murder and kidnapping, the presumption of inherent prejudice is reserved for rare and extreme cases. In all other cases, the change-of-venue question turns on the second tier of our analysis, whether the voir dire testimony of those who became trial jurors demonstrated such actual prejudice that it was an abuse of discretion to deny a timely change-of-venue motion. *Pruett [v. Norris]*, 153 F.3d [579,] 587 [(8th Cir. 1998)].

*Blom*, 242 F.3d at 803. In considering whether pretrial media coverage meets the "rare and extreme" standard, the *Blom* court considered whether the media coverage was "so inflammatory or accusatory as to presumptively create 'a trial atmosphere that had been utterly corrupted by press coverage.'" 242 F.3d at 804 (quoting *Murphy v. Florida*, 421 U.S. 794, 798, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975)). In rejecting the defendant's appeal, the *Blom* court found the defendant had failed to meet this standard, and the

6

district court had not erred in denying Blom's motion for change of venue. *Blom*, 242 F.3d at 804-05.

The *Blom* court also was persuaded by the number and degree of precautions taken by the trial court to assure the selection of an impartial, unbiased jury. The trial court moved the case to a location, although still within the district, that was farther removed from the site of the crime than another available location. The court assembled an unusually large jury pool, and excluded from the jury pool persons who lived within the particular area in which the victim had been abducted. The court mailed an extensive questionnaire to prospective jurors to inquire about their exposure to pretrial publicity, and increased each side's number of peremptory strikes. The *Blom* court found these measures, together with the lack of inflammatory or accusatory media coverage, were sufficient to support the trial court's denial of the defendant's motion for change of venue. *Id. See also Nelson*, 347 F.3d at 709 ("the district court submitted a questionnaire to the potential jurors inquiring into, among other things, the amount of publicity to which they had been exposed, [and] their ability to set aside any impressions that they may have formed[.]")

These cases support the conclusion that Wendelsdorf's right to trial by a fair and impartial jury in Sioux City, Iowa, could be protected by certain precautions. A jury questionnaire could address the issue by inquiring into the potential jurors' exposure to publicity regarding Wendelsdorf, and whether they had formed strong or fixed opinions about his case. In addition, the jury pool could exclude the counties directly connected with the events and trials that occurred in connection with Wendelsdorf's previous charges.

Of some concern is that in all of the seminal cases regarding the effect of pretrial publicity, the publicity about which the defendant complained related to the charges on

7

which he was being tried. In those cases, the publicity would be mitigated to some extent, at least with regard to the jurors' opinions, by the evidence presented at the trial. The present circumstances differ because the evidence presented at trial will relate only to Wendelsdorf's *current* charges, not to the allegations and insinuations relating to the charges on which he was acquitted in 2000. Thus, it probably will be necessary to inquire of potential jurors as to whether they have formed opinions about Wendelsdorf as a result of his *prior* charges that will affect their ability to be fair and impartial in trying him on the *current* charges. Again, it is possible a proper juror questionnaire could uncover such bias or prejudice relating to the prior charges. The court will address issuance of such a questionnaire by separate order.

Notably, the trial court may, in its discretion, reserve ruling on Wendelsdorf's motion to transfer until voir dire, or at least until after potential jurors respond to a questionnaire, at which point the court will have "the information necessary to conduct the due process analysis." *United States v. Green*, 983 F.2d 100, 102 (8th Cir. 1992) (noting "it is preferable for the trial court to await voir dire before ruling on motions for a change of venue"). The Government does not resist Wendelsdorf's request for a juror questionnaire, as stated in the Government's brief and as represented by the Government's counsel at the hearing. (*See* Doc. No. 27 at 7, suggesting the use of a juror questionnaire to determine the impact of pretrial publicity)[3] The court finds this would be the best course of action here.

---

[3] The Government further argues the length of time that has elapsed between Wendelsdorf's prior trial and acquittal and the current charges rebuts any presumption of unfairness that otherwise might exist. (*See* Doc. No. 27 at 3, citing *United States v. Allee*, 299 F.3d 996, 1000 (8th Cir. 2002); *Pruett*, 153 F.3d at 586; *Snell v. Lockhart*, 14 F.3d 1289, 1294 (8th Cir. 1994); *Swindler v. Lockhart*, 885 F.2d 1342, 1348 (8th Cir. 1989)) Because coverage of Wendelsdorf's arrest and current charges repeatedly refers back to his previous trial and the circumstances that gave rise to the earlier charges, the court finds the cases cited by the Government in support of this argument are not persuasive.

8

### *III. CONCLUSION*

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED,** unless any party files objections to this Report and Recommendation as specified below, that Wendelsdorf's motion to transfer (Doc. No. 23) be reserved until the receipt of responses to the juror questionnaire or until voir dire, at the trial court's discretion.

Any party who objects to this Report and Recommendation must serve and file specific, written objections by **June 3, 2005**. Any responses to an opposing party's objections must be filed by **June 8, 2005**.

**IT IS SO ORDERED.**

**DATED** this 27th day of May, 2005.

*[signature]*

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT