# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JESSE JOHN WENDELSDORF,<br><br>    Defendant. | No. CR04-4111-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO DISMISS, STRIKE, OR AMEND INDICTMENT** |

## *I. INTRODUCTION*

The defendant Jesse John Wendelsdorf has filed a motion (Doc. No. 21) seeking dismissal of the Superseding Indictment on the basis of pre-indictment delay. In the alternative, Wendelsdorf asks the court to strike Count 1 from the Superseding Indictment, or "amend the dates of the alleged conspiracy to conform to the evidence." (*Id.*) The plaintiff (the "Government") has resisted the motion on all grounds. (Doc. No. 28) Wendelsdorf requested an evidentiary hearing on his motion, and the court granted that request and held a hearing on May 26, 2005. Assistant U.S. Attorneys Kevin Fletcher and Forde Fairchild appeared on behalf of the Government. Wendelsdorf appeared in person with his attorney Robert A. Lengeling.

At the hearing, Wendelsdorf offered the testimony of his father, James Wendelsdorf; Dickinson County Sheriff's Deputy Rex Floyd Ondler; former Dickinson County Attorney Edward Bjornstad; and Arnold's Park police officer Stacy Newgard (formerly an officer with the City of Milford, Iowa). The Government offered the testimony of Deputy Ondler and Spencer Police officer Chris Nissen. The following exhibits were admitted into evidence: **Gov't Ex. 1** - Application for Search Warrant in

Dickinson County, Iowa, Case No. M-014-03 (4 pages) (attached as Ex. 1 to Doc. No. 29); **Gov't Ex. 2** - Search Warrant in the same case (2 pages) (attached as Ex. 2 to Doc. No. 29); and **Gov't Ex. 3** - the same Search Warrant as Gov't Ex. 2, with attached Return of Service (5 pages).

The court finds the motion has been fully submitted. Pursuant to the trial management order (Doc. No. 13), pretrial motions in this case were assigned to the undersigned United States Magistrate Judge for review, and the issuance of a report and recommended disposition. Accordingly, the court turns to consideration of Wendelsdorf's motion to dismiss, strike, or amend the indictment.

## II. PROCEDURAL BACKGROUND

The Grand Jury handed down an Indictment against Wendelsdorf on November 17, 2004, charging him with one count of conspiracy to rent, maintain, use, and control a residence in Spirit Lake, Iowa, for the purpose of manufacturing and distributing methamphetamine, and conspiracy to possess with intent to distribute methamphetamine. (Doc. No. 1) The period of time during which these activities allegedly took place is January 1997 to January 2000. (*Id.*)

On December 15, 2004, the Grand Jury handed down a Superseding Indictment that added a second count, charging Wendelsdorf with conspiracy to manufacture and distribute methamphetamine between January 2001 and November 25, 2003. (Doc. No. 7) Wendelsdorf was arraigned on the Superseding Indictment on February 14, 2005, and trial of his case was scheduled for April 4, 2005. (Doc. No. 13) Wendelsdorf was placed on pretrial release. (Doc. No. 16) On Wendelsdorf's motion, the trial was continued to June 6, 2005. (*See* Doc. Nos. 19 & 20)

Wendelsdorf obtained an extension of the deadline to file pretrial motions (*id.*), and he timely filed the present motion on May 2, 2005. After obtaining an extension of time from the court, the Government filed its resistance on May 17, 2005. (Doc. No. 28) The court scheduled a hearing on Wendelsdorf's pretrial motions for May 26, 2005. In its order scheduling the hearing, the court continued the trial of the case to July 5, 2005, to allow time for rulings on pretrial motions. (*See* Doc. No. 24)

In the present motion, Wendelsdorf seeks dismissal of the Superseding Indictment on the basis of pre-indictment delay. He claims the Government has been investigating this case since at least 1997, yet an Indictment was not obtained until approximately forty-six months after the alleged criminal activity ended. In the motion, he argues the Government had "all of the information it needed to initiate the instant prosecution long before it finally obtained the original Indictment and the Superseding Indictment." (Doc. No. 21, ¶ 9) Wendelsdorf notes the original Indictment was obtained about two months before the statute of limitations would have barred his prosecution on these charges. He argues the Government delayed filing this case intentionally for the purpose of recruiting "as many cooperating witnesses as possible . . . to gain a tactical advantage over Wendelsdorf." (*Id.*, ¶ 10)

In addition, Wendelsdorf claims, in the motion, that he has been prejudiced by the pre-indictment delay. He states he was "acquitted in an infamous case of first degree murder and sexual abuse" of a child, and during the prosecution of that case, "it was widely rumored that [he] was involved in drugs even though he was not charged with any drug crimes at the time." (*Id.*, ¶ 11) He claims "the instant case is based on retribution for his acquittal in 2000," noting the Dickinson County Attorney has made statements to the media to the effect that justice would be served if Wendelsdorf were convicted on these charges. (*Id.*, ¶ 13)

For these reasons, Wendelsdorf seeks dismissal of the indictment on the basis of pre-indictment delay and the resulting prejudice to him. In the alternative, he seeks to have portions of the Superseding Indictment stricken "on the grounds that the government has insufficient evidence to prove the charges as they appear on the charging document." (*Id.*, ¶ 4)

### III. FACTUAL BACKGROUND

Preliminarily, the court notes the parties have presented a very sketchy background of the drug investigation regarding Wendelsdorf. In summary, although the record indicates Wendelsdorf was under suspicion for drug activities as far back as January 2000, it appears the first strong evidence of his involvement in drug activities came as the result of proffer interviews that occurred in late 2003 and early 2004, and the investigation continued until Wendelsdorf's girlfriend gave a proffer interview and then testified before the Grand Jury in late 2004. Testimony at the hearing on Wendelsdorf's motion to dismiss revealed the following facts.

In January 2000, Deputy Ondler and other officers investigated the death of a two-year-old Dickinson County girl named Shelby Duis. At the time, Wendelsdorf resided sporadically with Shelby and her mother, Heidi Watkins, and both Wendelsdorf and Watkins were targets of the investigation. The night Shelby's body was found, officers went to the home of Wendelsdorf's father, James Wendelsdorf, looking for Wendelsdorf.

Deputy Ondler testified that at the time of the murder investigation, Wendelsdorf and several other individuals were under investigation for drug-related crimes. Officers had some information that Wendelsdorf had used drugs on the day of Shelby's death. However, officers did not search James Wendelsdorf's home at that time, and Wendelsdorf was not charged with any drug crimes.

4

Wendelsdorf and Watkins both were charged in connection with Shelby's death. Wendelsdorf was tried in Buena Vista County on charges of murder and sexual abuse of a child, and he was acquitted. Watkins was tried in Kossuth County, and was convicted of child endangerment with an enhanced penalty. During and subsequent to the trials, the drug investigation involving Wendelsdorf and Watkins continued. On October 20, 2000, Watkins participated in a proffer interview at her attorney's office, but the record does not indicate whether she provided information regarding Wendelsdorf's drug activities. Deputy Ondler apparently testified before the Grand Jury on July 12, 2002, regarding the investigation, but the current record does not indicate what activities took place in the investigation between 2000 and 2002.

Officers apparently executed a search warrant at James Wendelsdorf's home on August 3, 2003, but this record does not indicate what, if anything, was found during the search. The earliest evidence of any significance in this record relating to the current charges against Wendelsdorf came from proffer interviews of Jason Storey on September 29, October 6, and October 16, 2003. Storey gave officers information regarding Wendelsdorf's girlfriend, Judy Laue, who allegedly was trafficking in prescription pills in exchange for methamphetamine. Storey testified before the Grand Jury on November 19, 2003, regarding the drug-related activities of Laue and others, but he apparently did not implicate Wendelsdorf at that time.

Tammy McGrew gave a proffer interview on October 15, 2003, and Lisa Van Ampting gave a proffer interview on December 15, 2003. Both of those individuals also gave officers information regarding Laue's drug activities. McGrew testified before the Grand Jury on November 19, 2003.

On this record, the first mention of Wendelsdorf in connection with the drug investigation was in January 2004, when Joel Storey gave a proffer interview. He told

5

officers Wendelsdorf and Laue were providing precursors for methamphetamine manufacturing. Officer Chris Nissen passed this information along to Deputy Ondler.

Laue was charged with drug-related crimes in State court in late 2003. In July 2004, she was appointed an attorney by this court for the purpose of participating in a proffer interview in connection with the federal drug investigation of Wendelsdorf and others. (*See* 04mj0220, Doc. No. 1) Deputy Ondler testified it took some time to arrange the proffer interview, and he finally conducted a proffer interview of Laue on December 9, 2004, during which Laue gave information regarding her drug-related activities with Wendelsdorf during a time period beginning in 2001. Laue testified before the Grand Jury on July 12, 2002, and December 14, 2004; however, Deputy Ondler stated that during Laue's December 2004 interview, she provided new information regarding Wendelsdorf that previously was unknown to officers. In particular, Laue discussed Wendelsdorf's and her own involvement with the Storeys in manufacturing methamphetamine.

The Grand Jury handed down the present Indictment against Wendelsdorf on November 17, 2004. A Superseding Indictment was returned on December 15, 2004, after the Grand Jury heard Laue's testimony.

### IV. DISCUSSION

#### A. *Pre-Indictment Delay*

Wendelsdorf argues that to prevail on his motion to dismiss for pre-indictment delay, "he must show that the government intentionally delayed seeking an indictment to gain tactical advantage and that the delay substantially prejudiced his defense." (Doc. No. 21, ¶ 10, citing *United States v. Lovasco*, 431 U.S. 783, 788-90, 97 S. Ct. 2044, 2047-49, 52 L. Ed. 2d 752 (1977)). On this record, Wendelsdorf has failed to show

either of these factors. It appears the Government waited to indict Wendelsdorf until the Government had information sufficient to support the Indictment. At most, it could be argued there was a several-month delay between the time the Government *could have* indicted Wendelsdorf and the time the original Indictment was handed down, but a delay of several months is not sufficient to support dismissal for pre-Indictment delay. Further, Wendelsdorf has failed to show the Government had all of the information relating to his alleged drug crimes significantly before obtaining an Indictment.

The United States Supreme Court has discussed at length the hurdles a defendant must surmount to prevail on a motion to dismiss for pre-indictment delay, as well as the reasons for avoiding a requirement that the Government move too hastily to prosecution of suspected criminals. The Court's discussion in *United States v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977), is pertinent to Wendelsdorf's motion:

> [S]tatutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide "'the primary guarantee, against bringing overly stale criminal charges.'" [*United States v. Marion*, 404 U.S. 307, 322, 92 S. Ct. 455, 464, 30 L. Ed. 2d 468 (1971)], quoting *United States v. Ewell*, 383 U.S. 116, 122, 86 S. Ct. 773, 777, 15 L. Ed. 2d 627 (1966). But we did acknowledge that the "statute of limitations does not fully define [defendants'] rights with respect to the events occurring prior to indictment," 404 U.S. at 324, 92 S. Ct. at 465, and that the Due Process Clause has a limited role to play in protecting against oppressive delay.

*Lovasco*, 431 U.S. at 789, 97 S. Ct. at 2048. *Accord United States v. Brockman*, 183 F.3d 891, 895 (8th Cir. 1999) (quoting *Lovasco*).

The Court noted a due process claim becomes "concrete and ripe for adjudication" upon the defendant's showing of actual prejudice; however, "'[a]ctual prejudice to the defense of a criminal case may result from the shortest and most necessary delays; and

7

no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution.'" *Lovasco*, 431 U.S. at 789-90, 97 S. Ct. at 2034 (quoting *Marion*, 404 U.S. at 234-25, 92 S. Ct. at 465). *See also United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000) ("The court will inquire into the reasons for delay only where actual prejudice has been established."); *United States v. Singer*, 687 F.2d 1135, 1142-43 (8th Cir. 1982) (defendant must show delay resulted in "actual prejudice not outweighed by the reasons for the delay"). In particular, the Court observed:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Rochin v. California*, 342 U.S. 165, 170, 72 S. Ct. 205, 209, 96 L. Ed. 183 (1952). Our task is more circumscribed. We are to determine only whether the action complained of – here, compelling respondent to stand trial after the Government delayed indictment to investigate further – violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 342, 79 L. Ed. 791 (1935), and which define "the community's sense of fair play and decency. . . ." [Citations omitted.]

*Lovasco*, 431 U.S. at 790, 97 S. Ct. at 2049.

The Court held the interests of the defendant, the Government, the courts, and the public would not be served by compelling the Government to initiate a prosecution as soon as prosecutors have probable cause to believe an accused is guilty, or even once sufficient evidence has been developed to obtain a conviction. *Id.*, 431 U.S. at 790-95, 97 S. Ct. at 2049-51. The Court noted more information often is needed before a prosecutor can make a charging decision. *Id.*, 431 U.S. at 794, 97 S. Ct. at 2051. This

is particularly true in a drug conspiracy case like the present one, where further investigation could show a defendant's specific role in the conspiracy, rather than simply the fact that he was involved. Similarly, further investigation could show a defendant's role was less significant than prosecutors at first believed. *See id.* The Court expressed a reluctance to adopt a rule that "would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases." *Id.*

On the specific issue of investigative delay, the Court held as follows:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," *United States v. Marion*, 404 U.S. at 324, 92 S. Ct. at 465, precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictment until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed," *Smith v. United States*, 360 U.S. 1, 10, 79 S. Ct. 991, 997, 3 L. Ed. 2d 1041 (1959). This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

*Lovasco*, 431 U.S. at 795-96, 97 S. Ct. at 2051-52.

In the present case, Wendelsdorf has neither alleged nor shown that the investigative delay in charging him has resulted in prejudice to his defense. He has not shown the Government delayed intentionally to gain any tactical advantage. And although the Government may have delayed, as Wendelsdorf asserts, for the purpose of

accumulating further evidence against him, that decision is not constitutionally infirm. *See Lovasco, supra.*

The court finds Wendelsdorf has failed to meet his burden to establish the constitutional significance of any of the reasons he has asserted for preaccusation delay, or that his rights have been violated by the delay.

### B. Insufficient Evidence Claim

In the alternative to dismissal, Wendelsdorf asks the court to strike portions of the Superseding Indictment due to insufficient evidence to prove the charges, or at least to amend Count One "to reflect the evidence in the case." (Doc. No. 21-2 at 9; *see* Doc. No. 21-1, ¶¶ 4, 16-20) Such a motion is grossly premature, and would have the effect of preventing a jury from considering the strengths and weaknesses of the case and making a decision regarding Wendelsdorf's guilt. Wendelsdorf has failed to cite any statute or case law that would allow the court to weigh the evidence and make such a decision prior to trial. Indeed, the law is to the contrary. *See United States v. Critzer*, 951 F.2d 306, 307-08 (11th Cir. 1992) (rules do not provide for pretrial determination of sufficiency of evidence, and no summary judgment procedure exists in criminal cases) (cited with approval in *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001)).

### V. CONCLUSION

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED,** unless any party files objections to this Report and Recommendation as specified below, that Wendelsdorf's motion to dismiss or strike (Doc. No. 21) be denied.

Any party who objects to this Report and Recommendation must serve and file specific, written objections by **June 13, 2005**. Any responses to an opposing party's objections must be filed by **June 17, 2005**.

**IT IS SO ORDERED.**

**DATED** this 3rd day of June, 2005.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT