# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESSE JOHN WENDELSDORF,<br><br>Defendant. | No. CR04-4111-MWB<br><br>**REPORT AND RECOMMENDATION<br>ON MOTION TO SUPPRESS** |

## *I. INTRODUCTION*

This matter is before the court on a motion to suppress evidence filed by the defendant Jesse John Wendelsdorf on May 2, 2005. (Doc. No. 22) After obtaining an extension of time from the court, the plaintiff (the "Government") filed a resistance to the motion on May 17, 2005. (Doc. No. 29) The court held an evidentiary hearing on the defendant's motion on May 26, 2005. Assistant U.S. Attorney Kevin Fletcher appeared on behalf of the Government. Wendelsdorf appeared in person with his attorney Robert A. Lengeling.

At the hearing, Wendelsdorf offered the testimony of his father, James Wendelsdorf; Dickinson County Sheriff's Deputy Rex Floyd Ondler; former Dickinson County Attorney Edward Bjornstad; and Arnold's Park police officer Stacy Newgard (formerly an officer with the City of Milford, Iowa). The Government offered the testimony of Deputy Ondler and Spencer Police officer Chris Nissen. The following exhibits were admitted into evidence: **Gov't Ex. 1** - Application for Search Warrant in Dickinson County, Iowa, Case No. M-014-03 (4 pages) (attached as Ex. 1 to Doc. No. 29); **Gov't Ex. 2** - Search Warrant in the same case (2 pages) (attached as Ex. 2 to

Doc. No. 29); and **Gov't Ex. 3** - the same Search Warrant as Gov't Ex. 2, with attached Return of Service (5 pages).

The court finds the motion has been fully submitted. Pursuant to the trial management order (Doc. No. 13), pretrial motions in this case were assigned to the undersigned United States Magistrate Judge for review, and the issuance of a report and recommended disposition. Accordingly, the court turns to consideration of Wendelsdorf's motion to suppress.

## II. PROCEDURAL BACKGROUND

The Grand Jury handed down an Indictment against Wendelsdorf on November 17, 2004, charging him with one count of conspiracy to rent, maintain, use, and control a residence in Spirit Lake, Iowa, for the purpose of manufacturing and distributing methamphetamine, and conspiracy to possess with intent to distribute methamphetamine. (Doc. No. 1) The period of time during which these activities allegedly took place is January 1997 to January 2000. (*Id.*)

On December 15, 2004, the Grand Jury handed down a Superseding Indictment that added a second count, charging Wendelsdorf with conspiracy to manufacture and distribute methamphetamine between January 2001 and November 25, 2003. (Doc. No. 7) Wendelsdorf was arraigned on the Superseding Indictment on February 14, 2005, and trial of his case was scheduled for April 4, 2005. (Doc. No. 13) Wendelsdorf was placed on pretrial release. (Doc. No. 16) On Wendelsdorf's motion, the trial was continued to June 6, 2005. (*See* Doc. Nos. 19 & 20)

Wendelsdorf obtained an extension of the deadline to file pretrial motions (*id.*), and he timely filed the present motion on May 2, 2005. In its order scheduling a hearing

on the motion, the court continued the trial of the case to July 5, 2005, to allow time for rulings on pretrial motions. (*See* Doc. No. 24)

### *III. FACTUAL BACKGROUND*

The Government's evidence against Wendelsdorf in this case includes, among other things, evidence flowing from execution of a search warrant that was executed at Wendelsdorf's residence in Milford, Iowa (the "Milford house"), on November 25, 2003. The evidence forms the basis for Count 2 of the Superseding Indictment, which charges Wendelsdorf with conspiracy to manufacture and distribute methamphetamine between January 2001 and November 25, 2003. Wendelsdorf apparently was convicted of drug charges in Iowa state court as a result of evidence discovered in the search of the residence.

Wendelsdorf argues the warrant was not supported by probable cause, and law enforcement officers could not have relied on the defective warrant in good faith. He seeks suppression of all evidence seized during, and flowing from, execution of the warrant, including statements he made to officers following his arrest on State charges in November 2003.

At the hearing, Wendelsdorf's attorney stated Wendelsdorf is not raising an issue regarding the veracity of the statements in the warrant application (*see* Gov't Ex. 1), and therefore, he did not undertake to make a showing for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Wendelsdorf acknowledged the issue is one of probable cause, based on the four corners of the warrant itself. For the benefit of the district court, the undersigned offers the following factual background to put the search warrant in context.

The record indicates Wendelsdorf was under suspicion for drug activities as far back as January 2000. However, on this record, the earliest evidence of any significance relating to the current charges against Wendelsdorf came from proffer interviews of Jason Storey on September 29, October 6, and October 16, 2003. Storey gave officers information regarding Wendelsdorf's girlfriend, Judy Laue, who allegedly was trafficking in prescription pills in exchange for methamphetamine. Storey testified before the Grand Jury on November 19, 2003, regarding the drug-related activities of Laue and others, but he apparently did not implicate Wendelsdorf at that time.

Tammy McGrew gave a proffer interview on October 15, 2003, and gave officers further information regarding Laue's drug activities. McGrew testified before the Grand Jury on November 19, 2003.

At a Northwest Iowa Drug Task Force meeting, Officer Nissen told Officer Newgard, who at that time was a patrol officer with the City of Milford Police Department, that officers had received information indicating Laue was dealing drugs from the Milford house. The conversation between Officer Nissen and Officer Newgard was very brief, and Officer Nissen did not convey any details regarding who had provided the information to him, the time frame of the alleged drug activities, or even the exact address of the house. He only provided the street on which the house was located, and noted it was Laue's residence. However, Officer Newgard was familiar with Laue and the Milford house. Officer Newgard sought a search warrant to search the Milford house, an outbuilding, and an unattached garage, as well as a Blue 1995 Dodge Neon automobile registered to Laue and her mother, Roxie Stephens. Officer Newgard provided the following information in support of the warrant:

> On 11/20/2003 I received information thru Spencer Police Dept. Narcotics Officer Chris Nissen that Judy Laue was trading and selling prescription medication (Zanex),

4

> Darvocet, Hydrocodone from her mother Roxie Stephenson for methamphetamine.
>
> Surveillance was done on [the Milford house] for several hours but no activity was observed. From 11/20/03 to 11/25/2003[.]
>
> On 11/24/2003 I did a garbage pull from [the Milford house,] the residence of Judy Laue & Roxie Stephens. In the garbage I found several bills to Judy Laue and Roxie Stephens which indicated it was their garbage. I did a records check with City utilities and verified that Roxie Stephens had service there. I also ran a records check on the blue Dodge Neon [license number omitted] which came back to Judy Laue and Roxie Stephens, to a PO Box [number omitted] in Milford.
>
> In the garbage pull I found 2.1 grams of green stem and seed which tested positive for THC/Marijuana per the field test kit (N.I.K.).
>
> A criminal history check was done on Judy Laue and I found that she had prior drug convictions for possession of controlled substance on 10/01/1995 and accommodation to sell controlled substance on 09/17/1993.

(Gov't Ex. 1, p. 3) At the hearing, Officer Newgard testified he had heard Wendelsdorf was living at the Milford house, but he had not confirmed that information.

The Dickinson County Associate Judge who issued the search warrant noted, in his Endorsement to the application, that he had found the information provided in Officer Newgard's application to justify probable cause, and "[n]o additional testimony" was taken from Officer Newgard. (*Id.*, p. 4)

Therefore, the sole question before the court is whether the above-quoted information provided in the application was sufficient to establish probable cause for issuance of the warrant.

## IV.  DISCUSSION

### A.  Standard of Review

The United States Supreme Court has set the standard for review of a search warrant application, as follows:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.  A magistrate's "determination of probable cause should be paid great deference by reviewing courts."  *Spinelli [v. United States,]* 309 U.S. [410,] 419, 89 S. Ct. [1509,] 590[, 21 L. Ed. 2d 637 (1969)].  "A grudging or negative attitude by reviewing courts toward warrants," *[United States v.] Ventresca*, 380 U.S. [102,] 108, 85 S. Ct. [741,] 745, [13 L. Ed. 2d 684 (1965)], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant [and] "courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner."  *Id.*, [380 U.S.] at 109, 85 S. Ct. at 746.
>
> . . . .  Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.  *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736, 4 L. Ed. 2d 697 (1960).  *See United States v. Harris*, 403 U.S. 573, 577-583, 91 S. Ct. 2075, 2079-2082, 29 L. Ed. 2d 723 (1971). [FN10]
>
> [FN10]  We also have said that "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants," *Ventresca*, *supra*, 380 U.S. at 109, 85 S. Ct. at 746.  This

> reflects both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case.

*Illinois v. Gates*, 462 U.S. 213, 236-37 & n.10, 103 S. Ct. 2317 & n.10, 2331, 76 L. Ed. 2d 527 (1983).

Thus, the scope of this court's review of the search warrant in this case is limited to a determination of whether the magistrate had a "substantial basis" to issue the warrant. In conducting this review, the court is mindful that

> affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law have no proper place in this area." *Ventresca, supra*, 380 U.S. at 108, 85 S. Ct. at 745. . . . [M]any warrants are – quite properly . . . issued on the basis of nontechnical, common-sense judgment of laymen applying a standard less demanding than those used in more formal legal proceedings.

*Gates*, 462 U.S. at 235-36, 103 S. Ct. at 2331. As the Supreme Court further explained:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Jones v. United States,* 362 U.S. [257,] 271, 80 S. Ct. [725,] 736[, 4 L. Ed. 2d 697 (1960)]. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does [the prior legal standard].

*Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332. *See also United States v. Fulgham*, 143 F.3d 399, 400-01 (8th Cir. 1998) ("When we review the sufficiency of an affidavit supporting a search warrant, great deference is accorded the issuing judicial officer. *See United States v. Day*, 949 F.2d 973, 977 (8th Cir. 1991).")

### B. *Probable Cause Analysis*

Preliminarily, on this record, the court notes the information conveyed to Officer Newgard by Officer Nissen following the proffer interviews was nonspecific with regard to when Laue's alleged drug activities had taken place, or anything about the source of Officer Nissen's information. Officer Newgard testified Officer Nissen gave him the information during a brief conversation at a Northwest Iowa Drug Task Force meeting. Officer Nissen did not even know the specific address of the house where the drug activities allegedly had taken place; he simply related that officers had received some information indicating there was drug activity at Laue's house, giving the name of the street on which the Milford house was located. Officer Newgard was familiar with Laue and knew where she lived, leading him to initiate activities in an attempt to verify the information.

Otherwise, Officer Nissen provided no information regarding the sources of his information, the dates when the drug activities allegedly took place, or anything else that could have provided "a substantial basis for crediting the hearsay." *See Gates*, 462 U.S. at 242, 103 S. Ct. at 2334. As a result, for purposes of reviewing the sufficiency of the warrant application, the court finds the information must be viewed as having come from an anonymous tip.

In numerous instances, the Eighth Circuit Court of Appeals has affirmed the issuance of warrants and wiretaps on the basis of information provided by anonymous or

confidential informants. However, in each case, either the informant was shown to be reliable, or the information was corroborated by independently-obtained information. In *United States v. Fairchild*, 189 F.3d 769 (8th Cir. 1999), a wiretap was issued based on information from six confidential informants, corroborated by investigative means that were detailed in the supporting affidavit. In *United States v. Pitts*, 173 F.3d 677 (8th Cir. 1999), a search warrant was issued based on information from a confidential informant about drug shipments to the defendant, bolstered by a controlled drug buy and officers' personal observations of the defendant's activities. In *United States v. Buchanan*, 167 F.3d 1207 (8th Cir. 1999), a confidential informant's information was corroborated by a known informant who made statements against his own penal interest.

In *United States v. Goodson*, 165 F.3d 610 (8th Cir. 1999), the Eighth Circuit noted:

> We have repeatedly held that "'[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant'" and that "'[t]he reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information.'" *United States v. Formaro*, 152 F.3d 768, 770 (8th Cir. 1998) (quoting *United States v. Wright*, 145 F.3d 972, 974-75 (8th Cir.), *cert. denied*, 525 U.S. 919, 119 S. Ct. 272, 142 L. Ed. 2d 224 (1998)).

*Goodson*, 165 F.3d at 614. Three confidential informants corroborated each other's information, and one of the informants had a track record of reliability. *See id.*

These are only a few of the many cases in which the Eighth Circuit has examined the issue of when a warrant may be issued based on information from a confidential or anonymous source. What seems clear from the case law is that an informant's reliability, although not dispositive, is a key factor in the analysis. An informant's information may be corroborated by law enforcement, but the warrant application should contain at least

9

some reference to the way in which the information was corroborated, and what specific information was corroborated. *See, e.g., Mueller v. Tinkham*, 162 F.3d 999, 1003 (8th Cir. 1998) ("The information provided by an informant is sufficient to support a probable cause finding if the person has provided reliable information in the past or if the information has been independently corroborated[,]" citing *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998)); *United States v. Wilson*, 964 F.2d 807 (8th Cir. 1992) (informant's statements were against penal interest; information corroborated by agent's observations); *United States v. Little*, 735 F.2d 1049 (8th Cir. 1984) (affidavit did not attest to informant's reliability; no corroboration of significant details); *see also Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990) (in context of investigatory stop of defendant's vehicle based on informant's tip, Court held absent sufficient corroboration by police, the tip lacked necessary indicia of reliability to determine informant's honesty, or reliability of information); *United States v. Danhauer*, 229 F.3d 1002 (10th Cir. 2000) (either the informant's information should be independently corroborated or the informant's veracity determined); *United States v. Townsley*, 843 F.2d 1070, 1078-79 (8th Cir. 1988) (probable cause to issue order for electronic surveillance may be based on double hearsay, when confidential sources have proved reliable in past and information is corroborated by independently-obtained information).

The warrant application in the present case indicates Officer Newgard attempted to confirm the anonymous tip in three ways. First, he conducted surveillance on the Milford house for several hours over a five-day period of time, but no suspicious activity was observed. Thus, the surveillance did nothing to corroborate the tip.

Second, he performed a criminal history check on Laue and found she had prior drug convictions, in 1993 and 1995, for possession and sale of controlled substances.

10

Given Laue's lack of criminal history for an eight-year period of time, this fact, standing alone, provides little to support the probable cause determination.

Third, the officer did a trash pull and found marijuana stems and seeds. (*See* Gov't Ex. 1, p. 3) In addition, Officer Newgard confirmed, through the trash pull and public records, that Laue and her mother lived at the Milford house, and a Blue Dodge Neon was registered to them. (*Id.*)

Although "[t]he waste products of marijuana use do not, of themselves, indicate any continuing presence of contraband in the home," *United States v. Elliott*, 576 F. Supp. 1579, 1581 (S.D. Ohio 1984), the Eighth Circuit Court of Appeals has held the presence of marijuana stems in a suspect's trash corroborate a tip that a suspect is dealing drugs and increase the credibility of the informant. *United States v. Koons*, 300 F.3d 985, 991 (2002). Although there is less information about the informant in the present case than was available in *Koons*, the presence of marijuana stems in Laue's trash nevertheless at least gave rise to the presumption that marijuana had been used in her residence at some point in the recent past. *Cf. Elliott, supra* ("Even assuming weekly garbage collection, the contraband may well have been evidence of marijuana use five days prior to the examination of the garbage.") The Eighth Circuit has upheld warrants "based on tips of drug activity which have been corroborated by police work which uncovered drug residue in a suspect's trash." *Koons*, 300 F.3d at 991 (citing *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001); *United States v. Hohn*, 8 F.3d 1301, 1306 (8th Cir. 1993)).

Probable cause to support the warrant in the present case was doubtful, at best. However, applying the deferential standard set forth in *Gates*, and the preference for resolving doubtful or marginal cases in favor of upholding warrants, *see United States v. Ventresca*, 380 U.S. 102, 109, 85 S. Ct. 741, 746, 13 L. Ed. 2d 684 (1965), the court

finds the warrant application was legally sufficient for the issuing judge to find probable cause for a search of the Milford house and the Dodge Neon vehicle. *See United States v. Pennington*, 287 F.3d 739, 744-45 (8th Cir. 2002) ("[A] vehicle found on a premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises.")

In addition, the court finds "[i]t was not objectively unreasonable for the officers to proceed to execute the warrant in these circumstances where there was evidence to corroborate the tip and where an independent [judge] had found that the affidavit stated probable cause." *Koons*, 300 F.3d at 991. The "executing officers acted in objective good faith on the [state judge's] determination of probable cause, even if probable cause is later found to be lacking." *Koons*, 300 F.3d at 992 (citing *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420, 92 L. Ed. 2d 677 (1984)).

## *V. CONCLUSION*

For the above reasons, **IT IS RESPECTFULLY RECOMMENDED** that Wendelsdorf's motion to suppress be **denied.**

Any party who objects to this report and recommendation must serve and file specific, written objections by **June 17, 2005**. Any response to the objections must be served and filed by **June 21, 2005.**

**IT IS SO ORDERED.**

**DATED** this 9th day of June, 2005

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT