# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR04-4111-MWB |
| Plaintiff, | |
| vs. | **ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO DISMISS** |
| JESSE JOHN WENDELSDORF, | |
| Defendant. | |

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On December 15, 2004, a superceding indictment was returned against defendant Jesse John Wendelsdorf, charging him with conspiring to maintain a place for the purpose of using, manufacturing and distributing a controlled substance (methamphetamine), knowingly making a residence available for the purpose of manufacturing, distributing, and using a controlled substance (methamphetamine and marijuana), and distributing and possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 846. Defendant Wendelsdorf subsequently filed a motion to dismiss. In his motion to dismiss, defendant Wendelsdorf seeks dismissal of the Superseding Indictment on the basis of pre-indictment delay. In the alternative, defendant Wendelsdorf requests that Count 1 be stricken from the Superseding Indictment, or to "amend the dates of the alleged conspiracy to conform to the evidence." The government has resisted defendant Wendelsdorf's motion. Defendant Wendelsdorf's motion was referred to United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). Judge Zoss conducted an evidentiary

hearing and then filed a Report and Recommendation in which he recommends that defendant Wendelsdorf's motion be denied. Judge Zoss concluded that defendant Wendelsdorf has failed to show either the government intentionally delayed seeking an indictment to gain tactical advantage or that the delay substantially prejudiced his defense. In considering defendant Wendelsdorf's alternative relief that the court strike portions of the Superseding Indictment due to insufficient evidence to prove the charges, or at least to amend Count One "to reflect the evidence in the case," Judge Zoss concluded that such a motion is grossly premature, and would have the effect of preventing a jury from considering the strengths and weaknesses of the case and making a decision regarding defendant Wendelsdorf's guilt. Judge Zoss therefore recommended that defendant Wendelsdorf's motion to dismiss be denied. None of the parties have filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Wendelsdorf's motion to dismiss.

### B. Factual Background

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> Preliminarily, the court notes the parties have presented a very sketchy background of the drug investigation regarding Wendelsdorf. In summary, although the record indicates Wendelsdorf was under suspicion for drug activities as far back as January 2000, it appears the first strong evidence of his involvement in drug activities came as the result of proffer interviews that occurred in late 2003 and early 2004, and the investigation continued until Wendelsdorf's girlfriend gave a proffer interview and then testified before the Grand Jury in late 2004. Testimony at the hearing on Wendelsdorf's motion to dismiss revealed the following facts.

2

In January 2000, Deputy Ondler and other officers investigated the death of a two-year-old Dickinson County girl named Shelby Duis. At the time, Wendelsdorf resided sporadically with Shelby and her mother, Heidi Watkins, and both Wendelsdorf and Watkins were targets of the investigation. The night Shelby's body was found, officers went to the home of Wendelsdorf's father, James Wendelsdorf, looking for Wendelsdorf. Deputy Ondler testified that at the time of the murder investigation, Wendelsdorf and several other individuals were under investigation for drug-related crimes. Officers had some information that Wendelsdorf had used drugs on the day of Shelby's death. However, officers did not search James Wendelsdorf's home at that time, and Wendelsdorf was not charged with any drug crimes.

Wendelsdorf and Watkins both were charged in connection with Shelby's death. Wendelsdorf was tried in Buena Vista County on charges of murder and sexual abuse of a child, and he was acquitted. Watkins was tried in Kossuth County, and was convicted of child endangerment with an enhanced penalty. During and subsequent to the trials, the drug investigation involving Wendelsdorf and Watkins continued. On October 20, 2000, Watkins participated in a proffer interview at her attorney's office, but the record does not indicate whether she provided information regarding Wendelsdorf's drug activities. Deputy Ondler apparently testified before the Grand Jury on July 12, 2002, regarding the investigation, but the current record does not indicate what activities took place in the investigation between 2000 and 2002.

Officers apparently executed a search warrant at James Wendelsdorf's home on August 3, 2003, but this record does not indicate what, if anything, was found during the search. The earliest evidence of any significance in this record relating to the current charges against Wendelsdorf came from proffer interviews of Jason Storey on September 29, October 6, and October 16, 2003. Storey gave officers information regarding

Wendelsdorf's girlfriend, Judy Laue, who allegedly was trafficking in prescription pills in exchange for methamphetamine. Storey testified before the Grand Jury on November 19, 2003, regarding the drug-related activities of Laue and others, but he apparently did not implicate Wendelsdorf at that time.

Tammy McGrew gave a proffer interview on October 15, 2003, and Lisa Van Ampting gave a proffer interview on December 15, 2003. Both of those individuals also gave officers information regarding Laue's drug activities. McGrew testified before the Grand Jury on November 19, 2003.

On this record, the first mention of Wendelsdorf in connection with the drug investigation was in January 2004, when Joel Storey gave a proffer interview. He told officers Wendelsdorf and Laue were providing precursors for methamphetamine manufacturing. Officer Chris Nissen passed this information along to Deputy Ondler.

Laue was charged with drug-related crimes in State court in late 2003. In July 2004, she was appointed an attorney by this court for the purpose of participating in a proffer interview in connection with the federal drug investigation of Wendelsdorf and others. (*See* 04mj0220, Doc. No. 1) Deputy Ondler testified it took some time to arrange the proffer interview, and he finally conducted a proffer interview of Laue on December 9, 2004, during which Laue gave information regarding her drug-related activities with Wendelsdorf during a time period beginning in 2001. Laue testified before the Grand Jury on July 12, 2002, and December 14, 2004; however, Deputy Ondler stated that during Laue's December 2004 interview, she provided new information regarding Wendelsdorf that previously was unknown to officers. In particular, Laue discussed Wendelsdorf's and her own involvement with the Storeys in manufacturing methamphetamine.

The Grand Jury handed down the present Indictment against Wendelsdorf on November 17, 2004. A Superseding

4

> Indictment was returned on December 15, 2004, after the Grand Jury heard Laue's testimony.

Report and Recommendation at pp. 4-6. Upon review of the record, the court adopts all of Judge Zoss's factual findings.

## II. LEGAL ANALYSIS

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report

where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*).

As the court noted above, no party has filed an objection to Judge Zoss's Report and Recommendation, and it appears to the court upon review of Judge Zoss's findings and conclusions, that there is no ground to reject or modify them. Therefore, the court **accepts** Judge Zoss's Report and Recommendation, and orders that defendant Wendelsdorf's motion to dismiss is denied.

**IT IS SO ORDERED.**

**DATED** this 4th day of August, 2005.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA