# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JESSE JOHN WENDELSDORF,<br><br>    Defendant. | No. CR04-4111-MWB<br><br>**ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On December 15, 2004, a superceding indictment was returned against defendant Jesse John Wendelsdorf, charging him with conspiring to maintain a place for the purpose of using, manufacturing and distributing a controlled substance (methamphetamine), knowingly making a residence available for the purpose of manufacturing, distributing, and using a controlled substance (methamphetamine and marijuana), and distributing and possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 846. Defendant Wendelsdorf filed a motion to suppress. In his motion to suppress, defendant Wendelsdorf contends that a search warrant that was executed on his residence was not supported by probable cause, and law enforcement officers could not have relied on the defective warrant in good faith. He seeks suppression of all evidence seized during, and flowing from, execution of the warrant, including statements he made to officers following his arrest on state charges in November 2003. Defendant Wendelsdorf's motion was referred to United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b).

Judge Zoss conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that defendant Wendelsdorf's motion be denied. Judge Zoss found that while probable cause to support the warrant in the present case was doubtful, applying the deferential standard set forth in *Illinois v. Gates*, 462 U.S. 213, 235-37 (1983) and the preference for resolving doubtful or marginal cases in favor of upholding warrants, that the warrant application was legally sufficient for the issuing judge to find probable cause for a search of defendant Wendelsdorf's residence and his car. In addition, Judge Zoss concluded that it was not objectively unreasonable for the law enforcement officers here to proceed to execute the warrant in these circumstances where there was evidence to corroborate the tip and where an independent judge had found that the affidavit stated probable cause.

Defendant Wendelsdorf has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Wendelsdorf's motion to suppress.

### B. *Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> The record indicates Wendelsdorf was under suspicion for drug activities as far back as January 2000. However, on this record, the earliest evidence of any significance relating to the current charges against Wendelsdorf came from proffer interviews of Jason Storey on September 29, October 6, and October 16, 2003. Storey gave officers information regarding Wendelsdorf's girlfriend, Judy Laue, who allegedly was trafficking in prescription pills in exchange for methamphetamine. Storey testified before the Grand Jury on November 19, 2003, regarding the drug-related activities of Laue and others, but he apparently did not implicate

Wendelsdorf at that time.

Tammy McGrew gave a proffer interview on October 15, 2003, and gave officers further information regarding Laue's drug activities. McGrew testified before the Grand Jury on November 19, 2003.

At a Northwest Iowa Drug Task Force meeting, Officer Nissen told Officer Newgard, who at that time was a patrol officer with the City of Milford Police Department, that officers had received information indicating Laue was dealing drugs from the Milford house. The conversation between Officer Nissen and Officer Newgard was very brief, and Officer Nissen did not convey any details regarding who had provided the information to him, the time frame of the alleged drug activities, or even the exact address of the house. He only provided the street on which the house was located, and noted it was Laue's residence. However, Officer Newgard was familiar with Laue and the Milford house. Officer Newgard sought a search warrant to search the Milford house, an outbuilding, and an unattached garage, as well as a Blue 1995 Dodge Neon automobile registered to Laue and her mother, Roxie Stephens. Officer Newgard provided the following information in support of the warrant:

> On 11/20/2003 I received information thru Spencer Police Dept. Narcotics Officer Chris Nissen that Judy Laue was trading and selling prescription medication (Zanex), Darvocet, Hydrocodone from her mother Roxie Stephenson for methamphetamine.
>
> Surveillance was done on [the Milford house] for several hours but no activity was observed. From 11/20/03 to 11/25/2003[.]
>
> On 11/24/2003 I did a garbage pull from [the Milford house,] the residence of Judy Laue & Roxie Stephens. In the garbage I found several bills to Judy Laue and Roxie Stephens which indicated it was their garbage. I did a records check with City utilities and verified that Roxie Stephens had service there. I also ran a records

3

> check on the blue Dodge Neon [license number omitted] which came back to Judy Laue and Roxie Stephens, to a PO Box [number omitted] in Milford.
>
> In the garbage pull I found 2.1 grams of green stem and seed which tested positive for THC/Marijuana per the field test kit (N.I.K.).
>
> A criminal history check was done on Judy Laue and I found that she had prior drug convictions for possession of controlled substance on 10/01/1995 and accommodation to sell controlled substance on 09/17/1993.
>
> (Gov't Ex. 1, p. 3) At the hearing, Officer Newgard testified he had heard Wendelsdorf was living at the Milford house, but he had not confirmed that information.
>
> The Dickinson County Associate Judge who issued the search warrant noted, in his Endorsement to the application, that he had found the information provided in Officer Newgard's application to justify probable cause, and "[n]o additional testimony" was taken from Officer Newgard. (*Id.*, p. 4)

Report and Recommendation at pp. 2-5. Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by defendant Wendelsdorf.

## II. LEGAL ANALYSIS

### A. *Standard Of Review*

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the

> findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). As noted above, defendant Wendelsdorf has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Wendelsdorf's motion to suppress.

### *B. Objections To Report and Recommendation*

Defendant Wendelsdorf objects to Judge Zoss's conclusion that there was a substantial basis to support the state magistrate's finding of probable cause to search

5

defendant Wendelsdorf's residence. The seminal case of *Illinois v. Gates*, 462 U.S. 213 (1983), provides the standard an issuing court must follow in determining whether probable cause supports a search warrant application and, consequently, the duty of the reviewing court when considering the propriety of that determination:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238.

The question presented on review of an issuing judicial officer's determination is not whether the reviewing court would have issued the warrant based on the affidavit as presented, but whether the court which did issue the warrant had a "'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-239 (citation omitted). Thus, a reviewing court does not conduct a de novo review of the issuing judge's determination, but must instead afford it great deference. *Id.* at 236. As the United States Supreme Court explained in *Gates*:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." [*Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 590, 21 L.Ed. 2d 637 (1969) ]. "A grudging or negative attitude toward warrants," [*United States v. Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 745-46, 13 L.Ed. 2d 684 (1965)], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense,

> manner." *Id.*, at 109, 85 S. Ct. at 746.

*Gates*, 462 U.S. at 236; *see also United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995).

The Eighth Circuit Court of Appeals has weighed in on this topic as well, observing that:

> Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched.

*Gladney*, 48 F.3d at 312 (quoting *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir.1994)); *see also United States v. Wells*, 223 F.3d 835, 838 (8th Cir. 2000) ("The evidence as a whole must provide a substantial basis for a finding of probable cause to support the issuance of a search warrant."); *United States v. Johnson*, 219 F.3d 790, 790 (8th Cir. 2000) ("Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit.") (quoting *United States v. Tellez*, 217 F.3d 547 (8th Cir. 2000) (in turn quoting *United States v. Horn*, 187 F.3d 781 (8th Cir. 1999) (internal quotation marks omitted)). Equally on point is the observation of Justice (then Judge) Kennedy:

> For probable cause to exist, a magistrate need not determine that the evidence sought is in fact on the premises to be searched, or that the evidence is more likely than not to be found where the search takes place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

*United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985), *cert. denied*, 474 U.S. 847 (1985) (emphasis added in part) (citations omitted). Where, as here, the issuing state magistrate relied solely on the affidavit presented to her, "'only that information which is found within the four corners of the affidavit may be considered in determining the

existence of probable cause.'" *Gladney*, 48 F.3d at 312 (quoting *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982), *cert. denied*, 459 U.S. 1201 (1983)).

Upon review of the record and Judge Zoss's Report and Recommendation, the court concludes that Judge Zoss correctly concluded that there was a substantial basis to support the state magistrate's finding of probable cause to search defendant Wendelsdorf's residence. The court recognizes that the Eighth Circuit Court of Appeals has held that "punctilious paragraph-by-paragraph dissection of the supporting affidavit" is not the appropriate standard of review. *United States v. Townsley*, 843 F.2d 1070, 1076 (8th Cir. 1988); *see United States v. Leisure*, 844 F.3d 1347, 1354 (8th Cir. 1988) (declining to "undertake a piecemeal dismemberment of the various paragraphs of the affidavit without attention to its force as a whole."). Rather, the court acknowledges that a determination of probable cause depends on a reading of the affidavit as a whole. *Gates*, 462 U.S. at 237. Here, Judge Zoss considered the affidavit as a whole. Viewing the affidavit in a common sense manner, although an extremely close question, the court cannot say that the issuing state magistrate did not have a substantial basis to believe that the items sought in the warrant would be found at Wendelsdorf's residence. The key information here is the discovery of drug residue in the trash outside the residence. Courts have consistently held that evidence of drug residue discovered in a defendant's trash may be used to support a search warrant. *See California v. Greenwood*, 486 U.S. 37-38 (1988) (holding as valid law enforcement officers' use of evidence of drug activity obtained from search of trash set out for pickup in support of a search warrant). The trash analysis tended to show that the tipster was "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, 272 (2000). Thus, while the controlled trash cover does not indisputably demonstrate that Wendelsdorf possessed drugs in the residence, it does suggest a "fair probability" that evidence of illegal drug activity

would be discovered in Wendelsdorf's residence. *See United States v. Briscoe*, 317 F.3d 906, 908 (8th Cir. 2003) (holding that marijuana seeds and stems found in garbage outside defendant's residence were "stand-alone" evidence to establish probable cause to support search warrant for defendant's residence); *United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002) (upholding the validity of a search warrant based on statements by a confidential informant and plastic bags containing cocaine residue obtained from defendant's trash, even when the statements were excluded from consideration); *United States v. Reinholz*, 245 F.3d 765, 776 (8th Cir.) (holding that brass pipe with cocaine residue and twenty syringes found in trash, coupled with occupant's prior drug conviction, established probable cause for search warrant), *cert. denied*, 534 U.S. 896 (2001); *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 950-51 (8th Cir. 2001) (holding that crack pipe, baggies, and foil with methamphetamine residue found in trash, coupled with informant's tip, established probable cause for search warrant); *United States v. Hohn*, 8 F.3d 1301, 1302, 1306-07 (8th Cir.1993) (holding that baggie and sno-seals with methamphetamine residue found in trash, coupled with informant's tip, established probable cause for search warrant).

Moreover, the court notes that even if the warrant application here was deficient, the search is lawful under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the United States Supreme Court held that evidence obtained pursuant to a subsequently invalidated search warrant need not be excluded from the prosecution's case in chief if the executing officers acted in objectively reasonable reliance on the issuing court's determination of probable cause and technical sufficiency. *Id*. at 922-23. "[A]bsent allegations that the [issuing judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United*

9

*States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998) (quoting *Leon*, 468 U.S. at 926). The court finds no evidence in the record to suggest that the issuing state judge did not remain neutral and detached when making his probable cause determination. No evidence suggests that the issuing state judge "wholly abandoned his judicial role." *See Leon*, 468 U.S. at 923 (stating that suppression remains an appropriate remedy when the issuing judge wholly abandons his judicial role). In addition, because Officer Stacy Newgard knew that the issuing state judge had found the affidavit sufficient, the court concludes that Officer Newgard's reliance upon the issued search warrant was reasonable.

### III. CONCLUSION

Therefore, for the reasons set forth above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **denies** defendant Wendelsdorf's motion to suppress.

**IT IS SO ORDERED.**

**DATED** this 4th day of August, 2005.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA